UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAMLADE, | No. 1:21-cv-00522-DAD-EPG |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT LEO PHARMA INC.'S MOTION TO DISMISS |
| LEO PHARMA INC., et al., | (Doc. No. 15) |
| Defendants. | |

This matter is before the court on defendant LEO Pharma Inc.'s motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. No. 15.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission on the papers. (Doc. No. 16.) For the reasons explained below, the court will grant defendant's motion to dismiss.[2]

---

[1] Pursuant to stipulation, the parties agreed that the deadline for defendant LEO Pharma A/S to file its response to the complaint shall be extended until the date that is twenty-one (21) days after the court's ruling on this motion. (Doc. No. 25 at 3.)

[2] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation has now been partially addressed by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021, but for over twenty-two months before the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an

1

**BACKGROUND**

On March 29, 2021, plaintiff Brian Kamlade filed his complaint initiating this putative class action lawsuit against defendants LEO Pharma Inc. and LEO Pharma A/S (collectively "defendants"), alleging violations of California's consumer protection laws. (Doc. No. 1.)

Plaintiff alleges as follows in his complaint. Defendants manufactured and distributed a prescription Picato gel, also known as ingenol mebutate ("Picato"). (Compl. at ¶ 1.) Picato was indicated to treat precancerous Actinic Keratosis. (*Id.*) Actinic Keratosis is a scaly, crusty lesion on the skin caused by excessive sunlight exposure. (*Id.* at ¶ 3.) In September 2019, following reports of Picato-related skin cancer incidents, the European Commission requested a safety review of the drug. (*Id.* at ¶ 5.) In January 2020, the European Medicines Agency ("EMA") suspended the sale of Picato while EMA's Pharmacovigilance Risk Assessment Committee ("PRAC") conducted a review. (*Id.* at ¶ 6.) The January 2020 EMA suspension announcement cited several studies and clinical trials that allegedly suggest Picato increases one's risk of cancer. (*Id.* at ¶ 7.) In April 2020, PRAC issued a report confirming that Picato "may increase the risk of skin cancer" and concluded "that the risks of the medicine outweigh its benefits." (*Id.* at ¶ 9.) In July 2020, Health Canada, the department of the Canadian Government responsible for national health policy, issued a report stating that it had reviewed 29 case reports of skin cancer in patients treated with Picato, and that "26 cases were found to be possibly linked." (*Id.* at ¶ 12.) Based in part on this evidence, Health Canada concluded "that there may be a link between Picato and the risk of skin cancer." (*Id.* at ¶ 14.) In October 2020, at Health Canada's request, defendants initiated a recall of Picato from the Canadian market. (*Id.* at ¶ 15.) Health Canada advised patients being treated with Picato to "stop their treatment" and to "contact their healthcare professional to discuss other treatment options." (*Id.* at ¶ 17.) Also, in October 2020, LEO Pharma announced that it would permanently discontinue the manufacture of Picato. (*Id.* at ¶ 18.)

Plaintiff Brian Kamlade is a citizen of California who resides in Sanger, California. (*Id.* at ¶ 19.) In or about July 2018, plaintiff's doctor diagnosed him with Actinic Keratosis and

---

acceptable period of time. This situation has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

1   prescribed Picato for his use. (*Id.*) Thereafter, plaintiff filled his prescription for Picato at the
2   Cedar Pharmacy & Medical Supplies ("CPMC") located in Fresno, California and subsequently
3   used the Picato as directed by his doctor. (*Id.*) Plaintiff paid a total of $20 out of pocket in
4   copayment for the Picato, which was manufactured by defendant LEO Pharma A/S, distributed by
5   LEO Pharma Inc., and sold by CPMC. (*Id.*) After using the Picato gel as directed, plaintiff
6   developed skin cancer in the area where he had applied the Picato. (*Id.*) Plaintiff relied on the
7   labels and disclosures that accompanied the Picato in making his decision to purchase the
8   medication. (*Id.*) Plaintiff understood the labels and disclosures as representations and
9   warranties by the manufacturer, distributor, and pharmacy that the medication was properly
10  designed, effective, free from defects, and safe. (*Id.*)

11  Defendants, as the designers, manufacturers, and marketers of Picato, impliedly warranted
12  that Picato was (1) fit for use as a medication to treat precancerous actinic keratosis, and (2)
13  generally recognized as safe for human consumption. (*Id.* at ¶ 35.) Defendants breached the
14  warranty implied in the contract for the sale of the Picato medication because Picato was unfit for
15  its intended and ordinary purpose given that it was defective, carcinogenic, and not fit for use.
16  (*Id.* at ¶ 36.) As a result, plaintiff and the class members allegedly did not receive the goods as
17  impliedly warranted by defendants to be merchantable. (*Id.*)

18  Plaintiff seeks to represent a class defined as all persons in the United States who
19  purchased Picato. (*Id.* at ¶ 24.) Plaintiff also seeks to represent a subclass of all class members
20  who purchased Picato in California. (*Id.* at ¶ 25.) Plaintiff alleges that the common legal and
21  factual questions among the proposed class include:

22  - Whether the Picato manufactured, distributed, and sold by defendants poses an
23    unreasonably high risk of causing cancer in users;
24  - Whether defendants breached implied warranties to plaintiff and the class and California
25    subclass; and
26  - Whether plaintiff and the class and California subclass have sustained monetary loss and
27    the proper measure of damages.
28  (*Id.* at ¶ 28.)

1  Based on the foregoing, plaintiff asserts in the complaint a single count of breach of the implied warranty of merchantability against defendants.  (Doc. No. 1 at 8.)

On June 1, 2021, defendant LEO Pharma Inc. filed a motion to dismiss plaintiff's complaint.  (Doc. No. 15.)  On June 22, 2021, plaintiff filed its opposition to that motion, and on June 29, 2021, defendant filed its reply thereto.  (Doc. Nos. 19, 20.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

**A.  Implied Warranty of Merchantability**

Under California consumer protection law, the implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality."  *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal.

4

App. 4th 1291, 1296 (1995) (internal quotation marks and citation omitted). To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010); *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used.") (citation omitted)). "Such fitness is shown if the product is in safe condition and substantially free of defects . . . ." *Mexia.*, 174 Cal. App. at 1303 (internal quotation marks and citation omitted). In other words, a plaintiff claiming breach of an implied warranty of merchantability must allege and ultimately show that the product "did not possess even the most basic degree of fitness for ordinary use . . . ." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

In moving to dismiss the complaint, defendant LEO Pharma Inc. argues that plaintiff fails to state a claim for a breach of an implied warranty. (Doc. No. 15 at 8.) Specifically, defendant argues for dismissal of plaintiff's complaint for three reasons. (*Id.*) First, defendant contends that plaintiff's claims are subject to the learned intermediary doctrine. (*Id.*) Second, defendant contends that plaintiff fails to plead a viable damages theory. (*Id.*) Third, defendant contends that plaintiff has failed to plead that any breach of the implied warranty caused his harm. (*Id.* at 9.) The court finds defendant's argument with respect to the learned intermediary doctrine to be persuasive and will accordingly address only that argument below.

       1.     <u>The Learned Intermediary Doctrine</u>

California's learned intermediary doctrine holds that "a manufacturer of prescription drugs or medical devices satisfies its duty to warn when it provides adequate warnings to the prescribing physician, as opposed to the patient." *Zetz v. Boston Scientific Corp.*, 398 F. Supp. 3d 700, 706 (E.D. Cal. 2019) (citing *Carling v. Sup. Ct.*, 13 Cal. 4th 1104, 1116 (1996)).

Given that this case concerns a prescription medication, defendant LEO Pharma Inc. argues that the learned intermediary doctrine applies to plaintiff's implied warranty claim brought under California law. (Doc. No. 15 at 15) (citing *Buckley v. DJO Surgical*, No. 3:11-cv-02804-L-MDD, 2012 WL 4849368, at *4 (S.D. Cal. Oct. 11, 2012)). Defendant asserts that "[t]here are no

1  factual allegations concerning why Plaintiff's physician prescribed Picato for Plaintiff, what
2  information Plaintiff's physician considered when he or she decided to prescribe Picato for
3  Plaintiff, or whether the information provided by LEO Pharma to Plaintiff's physician was
4  somehow inadequate." (Doc. No. 15 at 15.) Defendant concludes that absent allegations
5  addressing these points, plaintiff has not adequately alleged an implied warranty of
6  merchantability claim. (*Id.*)

7  In his opposition to defendant's motion to dismiss, plaintiff argues that the learned
8  intermediary doctrine only applies to "failure to warn" product liability cases. (Doc. No. 19 at 7.)
9  Plaintiff contends that he is bringing a "design defect claim" and not a failure to warn claim. (*Id.*)
10 ("Plaintiff is not alleging that Defendant failed to warn him of the dangers of the Product, but that
11 the Product, as designed, was a carcinogen and ineffective such that the risks of the medication
12 outweighed its benefit.").[3]

13 In reply, defendant LEO Pharma Inc. counters that nothing in plaintiff's complaint nor in
14 the scientific studies referenced therein suggests that plaintiff is asserting a design defect claim in
15 this action. (Doc. No. 20 at 7.) Instead, defendant argues that plaintiff "now attempts to equate
16 'ineffectiveness' with Picato being an alleged carcinogen, and therefore 'defective.'" (*Id.* at 6.)
17 Moreover, defendant contends that even if plaintiff had pled a design defect claim (as opposed to
18 the actual warranty claim he has asserted), "such a claim would still implicate the learned
19 intermediary doctrine." (*Id.* at 11.)

20 The court finds defendant's arguments to be persuasive. As an initial matter, in his
21 complaint plaintiff unmistakably alleges a breach of the implied warranty of merchantability.
22 (Doc. No. 1 at 8) (listing count one as "Breach Of The Implied Warranty Of Merchantability").
23 As a matter of law, the learned intermediary doctrine extends to claims for breach of implied
24 warranty. *See Buckley*, 2012 WL 4849368, at *4 (citing *Carlin v. Sup. Ct.*, 13 Cal. 4th 1104,

---

[3] Plaintiff also argues that the learned intermediary doctrine is an affirmative defense, making its application at the motion to dismiss stage of this litigation inappropriate. (Doc. No. 19 at 9) (citing *Saavedra v. Eli Lily & Co.*, 2013 WL 6345442, at *3 (C.D. Cal. Feb. 26, 2013)). However, as defendant points out, federal courts in California routinely apply the learned intermediary doctrine in dismissing complaints upon motion of defendants. *See, e.g.*, *Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1163 (E.D. Cal 2019).

1118 (1996)). Accordingly, warnings concerning Picato's properties are properly directed to plaintiff's physician rather than to plaintiff. *See Carlin*, 13 Cal. 4th at 1118; *see also Brown*, 44 Cal. 3d at 1061–62 ("[A] patient's expectations regarding the effects of [a prescription] drug are those related to him by his physician, to whom the manufacturer directs the warnings regarding the drug's properties."). "Thus, for purposes of liability for breach of warranty, ordinarily it is the prescribing doctor who in reality stands in the shoes of 'the ordinary consumer.'" *Carlin*, 13 Cal. 4th at 1118 (quoting *Carmichael v. Reitz*, 17 Cal. App. 3d 958, 989 (1971)). As defendant points out, here plaintiff "does not allege that the information provided to his physician was inadequate." (Doc. No. 20 at 6–7.) Accordingly, the court concludes that plaintiff has not sufficiently alleged a breach of the implied warranty of merchantability because to adequately assert such a claim would require allegations as to what defendants did or did not tell plaintiff's prescribing physician. No such allegations are set forth in plaintiff's complaint.

To the extent plaintiff argues that he is actually bringing a design defect claim instead of a failure to warn implied warranty claim, plaintiff's complaint also fails to sufficiently state the basis for such a claim.[4] Notably, strict liability design-defect claims are firmly barred in the context of prescription drugs under California law. *See Brown v. Sup. Ct.*, 44 Cal. 3d 1049, 1069 (1988). In *Brown* the California Supreme Court held that "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* Thus, plaintiff's claim in this action could not be based

---

[4] Indeed, some of the cases relied upon by plaintiff in arguing that his claim sounds in "design defect," appear to in fact support defendant's arguments. For example, plaintiff cites the decision in *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW-MAN, 2013 WL 3148923, at *3 (C.D. Cal. June 13, 2013), but in that decision the district court warned that "'[i]f the [learned intermediary] doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such as violation of the [state law consumer protection act] . . ., then the doctrine would be rendered meaningless.'" *Id.* (citations omitted). Plaintiff also relies on the decision in *Kaspers v. Howmedica Osteonics Corp.*, No. 15-cv-0053-JLR, 2015 WL 12085853, at *7 (W.D. Wash. Oct. 23, 2015) for the proposition that the learned intermediary doctrine does not apply to manufacturing defect claims. (Doc. No. 19 at 10.) But plaintiff is attempting to allege a design defect claim, not a manufacturing defect claim, and the district court in *Kaspers* plainly stated that the learned intermediary doctrine *does* apply to design defect claims. *See Kaspers*, 2015 WL 12085853, at *8.

7

on a strict liability design defect theory. Nevertheless, "despite the exception for prescription drugs set forth in *Brown*, drug manufacturers remain subject to liability for manufacturing defects, negligence, and for failure to warn of known or reasonably knowable side effects." *Tucker v. Wright Med. Tech., Inc.*, No. 11-cv-03086-YGR, 2013 WL 1149717, at *5 (N.D. Cal. Mar. 19, 2013) (citing *Brown*, 44 Cal. 3d at 1169 n.12). Indeed, manufacturer liability for a design defect may rely *only* on a negligence theory. *See Waldo v. Eli Lilly & Co.*, No. 13-cv-0789-LKK-EFB, 2013 WL 5554623, at *2 (E.D. Cal. Oct. 8, 2013) (citing *Brown*, 44 Cal. 3d at 1065). Yet, plaintiff has not alleged any claim based upon a negligence theory of liability on the part of defendant.

      Here, plaintiff's complaint asserts only an implied warranty of merchantability claim rooted in a failure to warn. If plaintiff is attempting to allege a design-defect negligence claim or a manufacturing defect claim, such allegations are simply not evident on the face of the complaint. A plaintiff alleging a design defect claim under a negligence theory must allege and prove "that the defect in the product was due to negligence of the defendant." *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1305 (2012) (quoting *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 479 (2001)). "As with a general negligence claim, the plaintiff must show breach of duty, causation, and damages." *Tucker*, 2013 WL 1149717, at *7 (citing *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 428 (2013)). As to the standard of care for negligence, a "[designer/manufacturer] is negligent if [it] fails to use the amount of care in [designing] the product that a reasonably careful [designer/manufacturer] would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." *Howard*, 203 Cal. App. 4th at 428. A plaintiff may allege that "[e]ven if a manufacturer has done all it reasonably could have done to warn about a risk or hazard related to a product's design, a reasonable person could conclude that the magnitude of the reasonably foreseeable harm as designed outweighed the utility of the product as designed." *Tucker*, 2013 WL 1149717, at *7. This is akin to a risk-benefit test. *Id.* at *8.

      In his opposition to the pending motion, plaintiff repeatedly asserts that he is entitled to an award of damages in this case because "the risk of the medication outweighed its benefit." (*See,*

8

*e.g.*, Doc. No. 19 at 7.) Such arguments allude to a potential design-defect claim under a negligence theory, but nowhere does plaintiff clearly state that this is the claim he is attempting to bring. Neither party has addressed a potential negligence claim, and the court declines to dig through plaintiff's complaint to craft a potential claim from thin air. Given that plaintiff's factual allegations and the title of his singular claim as it appears in his complaint spell out only an implied warranty of merchantability claim and no other, defendants and the court are left to guess as to whether plaintiff is actually attempting to bring some other claim. That is not "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (ellipsis in original) (citation omitted).

Finally, even if a design defect claim was asserted, plaintiff has cited no cases holding that the learned intermediary doctrine does not apply to such claims. Similarly, plaintiff fails to present any legal authority suggesting that the learned intermediary doctrine only applies to physical injuries, as opposed to the economic injuries plaintiff seeks here. In contrast, at least one other district court in California has determined that the doctrine does in fact apply in situations such as the one alleged here by plaintiff. *See Andren v. Alere, Inc.*, No. 16-cv-1255-GPC (AGS), 2018 WL 1920179, at *5 (S.D. Cal. Apr. 24, 2018) (applying learned intermediary doctrine to a design defect claim seeking only economic damages). Simply put, plaintiff has not put forth sufficient factual allegations in his complaint to support a design defect claim nor an implied warranty failure to warn claim. Moreover, to the extent plaintiff attempts to bolster his complaint through his opposition brief, the court notes that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

The court will therefore grant defendant LEO Pharma Inc.'s motion to dismiss.

**B.      Leave to Amend**

Plaintiff requests leave to file a first amended complaint. (Doc. No. 19 at 15.) Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972

(9th Cir. 2009). There are several factors a district court considers in whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Of the *Foman* factors, the court should particularly consider prejudice to the opposing party. *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

There is no indication here that granting plaintiff leave to amend would be prejudicial to defendant, and defendant makes no argument to that effect. There is also no indication that plaintiff has acted in bad faith and the court notes that there have been no other attempts to cure deficiencies in the complaint by previously allowed amendments. Plaintiff will therefore be granted leave to amend.

## CONCLUSION

For the reasons stated above, defendant LEO Pharma Inc.'s motion to dismiss (Doc. No. 15) is granted and plaintiff will be granted leave to file an amended complaint in an attempt to cure the pleading deficiencies noted above. Any amended complaint plaintiff may elect to file shall be filed no later than twenty-one (21) days from the service of this order.

IT IS SO ORDERED.

Dated: **February 6, 2022**

_____
UNITED STATES DISTRICT JUDGE