1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice* forthcoming)
Andrew J. Obergfell (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com
        aobergfell@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAMLADE, on behalf of himself and all others similarly situated, | Case No.   1:21-CV-00522-DAD-EPG |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| LEO PHARMA INC. and LEO PHARMA A/S, | **JURY TRIAL DEMANDED** |
| Defendants. | |

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Brian Kamlade ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants LEO Pharma Inc. and LEO Pharma A/S (collectively "LEO Pharma" or "Defendants").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit about LEO Pharma's manufacturing and distribution of prescription Picato gel (ingenol mebutate) ("Picato").  Picato was indicated to treat precancerous actinic keratosis, but it instead increased the risk of squamous cell skin cancer.  Accordingly, Picato is worthless and Defendants should be required to fully refund consumers like Plaintiff.

2.      LEO Pharma has sold Picato in the United States since 2012.

3.      Picato is used to treat actinic keratosis, a scaly, crusty lesion on the skin, caused by too much sunlight exposure.

4.      For the treatment of actinic keratosis on the face or scalp, LEO Pharma recommended applying a 0.015% formulation of Picato gel to the affected area once daily for three consecutive days.  For the treatment of actinic keratosis on the trunk or extremities, LEO Pharma recommended applying a 0.05% formulation of Picato gel to the affected area once daily for two consecutive days.

5.      In September 2019, following reports of Picato-related skin cancer incidents, the European Commission requested a safety review of the drug.

6.      In January 2020, the European Medicines Agency ("EMA") suspended sale of Picato while its Pharmacovigilance Risk Assessment Committee ("PRAC") conducted the review.

7.      The January 2020 EMA suspension announcement cited troubling results from several studies and clinical trials:

FIRST AMENDED CLASS ACTION COMPLAINT                                                              1

- The final results of a three-year study in 484 patients showed a higher incidence of skin malignancy with ingenol mebutate than with the comparator imiquimod (3.3% of patients developed cancer in the Picato group versus 0.4% in the comparator group).

- A higher incidence of skin tumours occurred in the ingenol mebutate arm of an 8-week vehicle-controlled trial in 1,262 patients (1% of patients in the ingenol mebutate arm versus 0.1% in the vehicle arm).

- In addition, in four clinical trials involving 1,234 patients with a related ester, ingenol disoxate, a higher incidence of skin tumours occurred with ingenol disoxate than with a vehicle control (7.7% versus 2.9% of patients, respectively).  As ingenol disoxate is closely related to Picato, the results were considered relevant in the ongoing review of Picato.

8.      In February 2020, LEO Pharma requested that its marketing authorization in the EU be withdrawn.

9.      In April 2020, PRAC issued a report confirming that Picato "may increase the risk of skin cancer" and concluded "that the risks of the medicine outweigh its benefits."  PRAC added that "Picato's effectiveness is not maintained over time and noted that other treatment options are available for actinic keratosis."

10.      The PRAC report included the following information for healthcare professionals:

- Studies have found a higher incidence of skin tumours, especially squamous cell carcinoma, in the treatment area in patients treated with Picato (ingenol mebutate) or ingenol disoxate (a related ester not currently authorised and no longer in development) than with a comparator or vehicle (gel not containing any active substance).

- In the final results of a 3-year safety study in 484 patients, skin tumours were observed inside the treatment area in 6.3% of patients treated with ingenol mebutate compared with 2% of those treated with imiquimod. The difference was driven by squamous cell carcinoma (3.3% versus 0.4% of patients) and Bowen's disease (2.5% versus 1.2%).

- In a pooled analysis of four 14-month trials involving 1234 patients, higher incidence of tumours, including basal cell carcinoma, Bowen's disease and squamous cell carcinoma, was seen with the related ester ingenol disoxate than with vehicle (7.7% versus 2.9% of patients).

- Picato has already been taken off the market and is therefore no longer a treatment option for actinic keratosis.

- Other treatment options for actinic keratosis include topical diclofenac, fluorouracil and imiquimod, as well as photodynamic therapy, cryotherapy, curettage or excisional surgery.

FIRST AMENDED CLASS ACTION COMPLAINT                                                        2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Healthcare professionals should advise patients who have been treated with Picato to be vigilant for any skin lesions developing and to seek medical advice promptly should any occur.  Time to onset can range from weeks to months following treatment.

11.     The EMA warned patients treated with Picato that they "should look out for unusual skin changes or growths, which could occur from weeks to months after use, and seek medical advice if any occur."

12.     In July 2020, Health Canada, the department of the Government of Canada responsible for national health policy, issued a report stating that it had reviewed 29 case reports of skin cancer in patients treated with Picato, and that "26 cases were found to be possibly linked."

13.     In addition, Health Canada "assessed 12 studies published in scientific and medical literature in order to determine the link between the use of Picato and skin cancer" and "found that 6 of the 12 studies had evidence of skin cancer with the use of Picato."

14.     Based on this evidence, Health Canada concluded "that there may be a link between Picato and the risk of skin cancer."

15.     In October 2020, at Health Canada's request, LEO Pharma Inc. initiated a recall of Picato from the Canadian market.

16.     Health Canada advised patients being treated with Picato to "stop their treatment" and to "contact their healthcare professional to discuss other treatment options."

17.     Health Canada also advised patients to "monitor and immediately report to their healthcare professional any signs or symptoms of skin cancer, such as new scaly red patches on their skin, open sores, or elevated or warty growths within the treatment area, which could occur after stopping treatment."

18.     In October 2020, LEO Pharma announced that it would permanently discontinue the manufacture of Picato.

19.     Defendant did not provide adequate warning to Plaintiff Kamlade's physician or to

---

FIRST AMENDED CLASS ACTION COMPLAINT                                                                    3

Plaintiff Kamlade himself regarding the elevated cancer risk associated with using Picato gel. Defendants did not warn Plaintiff or his physician that Plaintiff was at risk of cancer as a result of using Picato.  As a direct and proximate result of Defendants' failure to provide adequate warnings regarding the carcinogenic nature of Picato, Mr. Kamlade developed cancer in the area where the Picato was applied.

20.     Defendants failure to provide adequate warnings regarding Picato is evidenced in part by the failure to provide adequate warnings on the labeling of the Product.  Indeed, in the original labeling document submitted by Leo Pharma A/S, the holder of the New Drug Application ("NDA")[1] for Picato, fails to provide any warnings related to skin cancer.  Indeed, the "Warnings and Precautions" section of the Prescribing Information document lists only warnings as to eye exposure and local skin reactions, but no mention of the risk of skin cancer.

21.     The Prescribing Information document was updated in 2016, but added only one additional warning for hypersensitivity reactions, but no mention of skin cancer.

22.     The Prescribing Information was updated again in February 2020, with the same warnings listed as the 2016 amendment; again no reference to skin cancer.

23.     Mr. Kamlade purchased Picato in or around July 2018, and therefore neither he nor his physician would have been made aware of any cancer risks associated with Picato.

24.     Picato was also defectively designed because it was carcinogenic and the risk of using Picato outweighed its benefit, thus making it unmerchantable as a prescription medication. Defendant was negligent in its design of Picato because it failed to adequately test the medication for risk of skin cancer.  In failing to undertake appropriate studies of Picato's carcinogenicity, Defendants breached a duty owed to Plaintiff and class members to ensure that Picato was

---

[1] https://www.accessdata.fda.gov/drugsatfda_docs/nda/2012/202833Orig1s000TOC.cfm (last visited 2/11/22).

FIRST AMENDED CLASS ACTION COMPLAINT                                                          4

reasonably safe for its intended use and that the risk of using the medication did not outweigh its benefit.  In short, the defective nature of the Product was due to Defendants' negligence.

25.     It is clear in light of Picato's withdrawal from the market and finding that its risks outweigh its benefits that the magnitude of the reasonably foreseeable harm as designed outweighed the utility of the product as designed.  Indeed, physicians were instructed to immediately stop prescribing Picato in light of this fact.

26.     Despite withdrawing the Product from the market, Defendants have not provided restitution to purchasers of the Products.

27.     Defendants had reason to know of the carcinogenic nature of Picato.  Defendants undertook a study "to compare the risk of developing squamous skin cancer (SCC) or other types of cancer after treatment of AKs with ingenol mebutate gel or imiquimod cream" beginning in 2013.  At no time was Plaintiff or his prescribing physician warned of this risk.

## PARTIES

28.     Plaintiff Brian Kamlade is a citizen of California who resides in Sanger, California.  In or about July 2018, Mr. Kamlade's doctor diagnosed him with actinic keratosis and prescribed Picato.  Thereafter, Mr. Kamlade filled his prescription for Picato at the Cedar Pharmacy & Medical Supplies ("CPMC") located in Fresno, California and used the Picato as directed by his doctor.  Mr. Kamlade paid a total of approximately $20.00 out of pocket in copayment for Picato.  The Picato that Mr. Kamlade purchased was manufactured by LEO Pharma A/S, distributed by LEO Pharma Inc. and sold by CPMC.  After using the Picato gel as directed, he developed cancer in the area where the Picato was applied.  Had Mr. Kamlade known that Picato was carcinogenic and/or ineffective for treating actinic keratosis, he would not have purchased it.

29.     Defendant LEO Pharma Inc. is a corporation incorporated under the laws of Delaware with a principal place of business at 7 Giralda Farms, 2nd Floor, Madison, New Jersey

---

FIRST AMENDED CLASS ACTION COMPLAINT                                                        5

08807.  LEO Pharma Inc. is a wholly owned subsidiary of Defendant LEO Pharma A/S.  LEO

Pharma Inc. conducts substantial business in the United States, and specifically in the State of

California.  LEO Pharma Inc. distributes and sells Picato in the United States, including in the State

of California.

30.     Defendant LEO Pharma A/S is a corporation incorporated under the laws of

Denmark with a principal place of business at Industriparken 55, DK-2750, Ballerup, Denmark.

LEO Pharma A/S conducts substantial business in the United States, and specifically in the State of

California.  LEO Pharma A/S manufactures Picato, which it sells in the United States, including in

the State of California, through its agent and wholly-owned subsidiary LEO Pharma Inc.  At all

relevant times, Leo Pharma A/S was the NDA holder for Picato, which required it to actively

monitor the safety and labeling of Picato, as well as monitor any adverse events.

### JURISDICTION AND VENUE

31.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as

modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as

defined below, is a citizen of a different state than Defendants, there are more than 100 members of

the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and

costs.

32.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts

and transactions giving rise to this action occurred in this District, and because Defendants (a) are

authorized to conduct business in this District and have intentionally availed themselves of the laws

and markets within this District through the promotion, marketing, distribution, and sale of Picato

in this District; (b) conduct substantial business in this District; and (c) are subject to personal

jurisdiction in this District.

---

FIRST AMENDED CLASS ACTION COMPLAINT                                                                              6

## CLASS ALLEGATIONS

33.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Picato (the "Class").  Specifically excluded from the Class are persons who made such purchase for the purpose of resale, Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

34.     Plaintiff also seeks to represent a subclass of all Class members who purchased Picato in California (the "California Subclass").

35.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and California Subclass may be expanded or narrowed by amendment or amended complaint.

36.     **Numerosity.**  The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of members in the Class.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendants and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

37.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

FIRST AMENDED CLASS ACTION COMPLAINT                                                                7

1

2

(a)      whether the Picato manufactured, distributed, and sold by Defendants poses an

unreasonably high risk of causing cancer in users;

3

4

(b)      whether Defendants breached its duty of care to Plaintiff and the Class and

California Subclass; and

5

6

7

(c)      whether Plaintiff and the Class and California Subclass have sustained monetary

loss and the proper measure of damages.

8

9

10

11

12

13

14

15

16

38.      **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the

Class and New York Subclass in that Defendants mass marketed and sold defective Picato to

consumers throughout the United States.  This defect was present in all of the Picato manufactured,

distributed, and sold by Defendants.  Therefore, Plaintiff's claims are typical in that Plaintiff and

Class members were uniformly harmed in purchasing and using the defective Picato.  Plaintiff's

claims are further typical in that Defendants deceived Plaintiff in the very same manner as they

deceived each member of the Class and California Subclass.  Further, there are no defenses

available to Defendants that are unique to Plaintiff.

17

18

19

20

21

22

39.      **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the

interests of the Class and California Subclass.  Plaintiff has retained counsel that is highly

experienced in complex consumer class action litigation, and Plaintiff intends to vigorously

prosecute this action on behalf of the Class and California Subclass.  Furthermore, Plaintiff has no

interests that are antagonistic to those of the Class and California Subclass.

23

24

25

26

27

28

40.      **Superiority.**   A class action is superior to all other available means for the fair and

efficient adjudication of this controversy.  The damages or other financial detriment suffered by

individual Class and California Subclass members are relatively small compared to the burden and

expense of individual litigation of their claims against Defendants.  It would thus be virtually

impossible for the Class and California Subclass, on an individual basis, to obtain effective redress

FIRST AMENDED CLASS ACTION COMPLAINT                                                                    8

for the wrongs committed against them.  Furthermore, even if Class and California Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

41.     In the alternative, the Class and California Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and California Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class and California Subclass members that would establish incompatible standards of conduct for the Defendants;

(b)     the prosecution of separate actions by individual Class and California Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and California Subclass members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class and California Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class and California Subclass as a whole.

**COUNT I**
**Breach Of The Implied Warranty Of Merchantability**
**(On Behalf Of Plaintiff And The Class And California Subclass)**

42.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint

---

FIRST AMENDED CLASS ACTION COMPLAINT                                                                9

43.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

44.     Defendants, as the designers, manufacturers, and marketers of Picato, impliedly warranted that Picato was (i) fit for use as a medication to treat precancerous actinic keratosis, and (ii) generally recognized as safe for human consumption.

45.     Defendants breached the warranty implied in the contract for the sale of the defective Picato medications because they could not pass without objection in the trade under the contract description, the Picato medications were not of fair or average quality within the description, and the Picato medications were unfit for their intended and ordinary purpose because the Picato medications manufactured, distributed, and sold by Defendants were defective in that they are carcinogenic and not fit for use, and as such are not generally recognized as safe for human consumption.  The fact that Defendants voluntarily ceased manufacturing and distributing the medications after recalls in other countries shows that they are unmerchantable and unfit for human use.  As a result, Plaintiff and Class and California Subclass members did not receive the goods as impliedly warranted by Defendants to be merchantable.

46.     Plaintiff and Class and California Subclass members purchased Picato medications in reliance upon Defendants' skill and judgment and the implied warranties of merchantability and fitness for the purpose.

47.     The Picato medications were not altered by Plaintiff or Class and California Subclass members.

48.     The Picato medications were defective when they left the exclusive control of Defendants.

49.     Defendants knew that the Picato medications would be purchased and used without additional testing by Plaintiff and Class and California Subclass members.

50.     Defendants failed to provide adequate warnings to Plaintiff or his prescribing physician regarding the carcinogenic nature of Picato.

51.     The defective Picato medications were defectively designed and unfit for their intended purpose, and Plaintiff and Class and California Subclass members did not receive the goods as warranted.

52.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class and California Subclass members have been injured and harmed because: (a) they would not have purchased Picato if they knew the medications caused a significantly elevated risk of cancer and that the medications are not generally recognized as safe for human consumption; and (b) the Picato medications do not have the characteristics, ingredients, uses, or benefits as promised by Defendants.  Plaintiff and members of the Class and California Subclass would have used a different medication had they known the truth about Picato.

53.     On March 23, 2021, Plaintiff provided Defendants with timely notice of this claim by letter that complied in all respects with U.C.C. § 2-607(3)(a).  The March 23, 2021 letter is attached hereto as Exhibit A.

## COUNT II
### Negligence
**(On Behalf Of Plaintiff And The Class And California Subclass)**

54.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint

55.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

56.     Defendants, as the designers, manufacturers and distributors of Picato, owed Plaintiff and the public a duty to use reasonable care in designing and testing Picato.

57.     Picato was defective in that it was carcinogenic, ineffective for treating actinic

keratosis, unfit for use on humans and unreasonably dangerous.

58.     Defendants breached its duty of care owed to Plaintiff and other consumers because it did use the amount of care in designing and testing Picato that a reasonably careful designer of a pharmaceutical would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.  If Defendants had properly tested Picato, it would have discovered that Picato is both carcinogenic and ineffective for treating actinic keratosis.

59.     As a direct and proximate cause of Defendants' negligence, Plaintiff and Class and California Subclass members have been injured and harmed in the form of an economic loss. Specifically, had Plaintiff and Class and California Subclass members known that Picato was negligently designed to be carcinogenic and/or ineffective for treating actinic keratosis, they would not have purchased Picato.

**COUNT III**
**Unjust Enrichment**
**(On Behalf Of Plaintiff And The Class And California Subclass)**

60.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint

61.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

62.     Plaintiff and other consumers conferred a benefit upon Defendants in the form of monies paid in exchange for Picato gel.

63.     In exchange for these monies paid, Plaintiff and other consumers were entitled to medication that was both effective and safe.

64.     Defendants voluntarily accepted and retained this benefit by accepting payment.

65.     Defendants have retained this benefit, even though the Picato gel that they provided was neither effective nor safe.

66.    It would therefore be unjust and inequitable for Defendants to retain this benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

    A.    For an order certifying the nationwide Class and the California Subclass
          under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff
          as representative of the Class and California Subclass and Plaintiff's
          attorneys as Class Counsel to represent the Class and members of the
          California Subclass;

    B.    For an order declaring the Defendants' conduct constitutes a breach of its
          implied warranty of merchantability;

    C.    For an order declaring the Defendants' conduct constitutes a breach of its
          duty of care;

    D.    For an order declaring that the Defendants were unjustly enriched;

    E.    For an order finding in favor of Plaintiff, the nationwide Class, and the
          California Subclass on all counts asserted herein;

    F.    For compensatory damages in amounts to be determined by the Court and/or
          jury; and

    G.    For prejudgment interest on all amounts awarded.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable of right.

Dated:  February 15, 2022              Respectfully submitted,

                                       **BURSOR & FISHER, P.A.**

                                       By:  _/s/ L. Timothy Fisher_
                                              L. Timothy Fisher

                                       L. Timothy Fisher (State Bar No. 191626)
                                       1990 North California Blvd., Suite 940
                                       Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
                                       Facsimile: (925) 407-2700

---

FIRST AMENDED CLASS ACTION COMPLAINT                                            13

E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Andrew J. Obergfell
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 837-7150
Facsimile:  (212) 989-9163
Email:  jarisohn@bursor.com
         aobergfell@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

# BURSOR & FISHER
P.A.

**1990 NORTH CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596-7351**
**www.bursor.com**

**L. TIMOTHY FISHER**
Tel: **925.300-4455**
Fax: **925.407.2700**
**ltfisher@bursor.com**

March 23, 2021

*<u>Via Certified Mail – Return Receipt Requested</u>*

LEO Pharma Inc.
7 Giralda Farms, 2nd Floor
Madison, New Jersey 08807

LEO Pharma A/S
Industriparken 55, DK-2750, Ballerup, Denmark

> Re:  *Notice and Demand Letter Pursuant to U.C.C. § 2-607; California Civil Code § 1782; and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by LEO Pharma, Inc. and LEO Pharma A/S pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties – and violations of state consumer protection laws –  related to our client, Brian Kamlade, and a class of all similarly situated purchasers (the "Class") of defective Picato gel (ingenol mebutate) ("Picato") manufactured and distributed by LEO Pharma Inc. and LEO Pharma A/S.  This letter also serves as a preliminary notice and demand for corrective action pursuant to numerous provisions of California law, including but not limited to subsections (a)(5), (7), and (9) of the Consumers Legal Remedies Act, California Civil Code § 1782; § 1770.

Mr. Kamlade was prescribed, purchased and used Picato. However, Mr. Kamlade's Picato medication was defective because use of Picato exposed him to an elevated risk of skin cancer, as noted by the European Medicines Agency ("EMA") following several studies and clinical trials of the product.  Indeed, the Pharmacovigilance Risk Assessment Committee ("PRAC") conducted a review and determined that Picato "may increase the risk of skin cancer" and "that the risks of the medicine outweigh its benefits."  In October 2020, LEO discontinued manufacture of Picato.  This defect rendered the products unusable and unfit for use. In short, the Picato medications that Mr. Kamlade and the Class were purchasing are worthless, as the risk of using the product outweighed any benefit of the same.  LEO Pharma Inc. and LEO Pharma A/S each violated express and implied warranties made to our clients and the Class regarding the quality and safety of the Picato medications they purchased. *See* U.C.C. §§ 2-313, 2-314.

Additionally, this letter also serves as notice of violation of California's Consumer Legal Remedies Act, and all other relevant state and local laws.  Had LEO Pharma Inc. and LEO Pharma A/S disclosed on the label that Picato exposed him to an elevated risk of skin cancer, Mr.

Kamlade would have been aware of that fact and would not have purchased Picato. Mr. Kamlade intends to bring an action on behalf of a class defined as all persons in the United States who purchased Picato. Ms. Baker also intends to bring an action on behalf of a subclass of persons who purchased Picato in the state of California. Mr. Kamlade sustained injury as a result of LEO Pharma Inc. and LEO Pharma A/S's actions.

On behalf of Mr. Kamlade and the Class, we hereby demand that LEO Pharma Inc. and LEO Pharma A/S immediately make full restitution to all purchasers of Picato of all purchase money obtained from sales thereof.

We also demand that LEO Pharma Inc. and LEO Pharma A/S preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the packaging, labeling, and manufacturing process for Picato;

2. All documents concerning the design, development, supply, production, extraction, and/or testing of Picato;

3. All testing of Picato, including all clinical trials and the findings thereof;

4. All documents concerning the pricing, advertising, marketing, and/or sale of Picato;

5. All communications with customers involving complaints or comments concerning Picato;

6. All documents concerning communications with any retailer involved in the marketing or sale of Picato;

7. All documents concerning communications with federal or state regulators and foreign regulators concerning Picato; and

8. All documents concerning the total revenue derived from sales of Picato.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter. If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

**BURSOR & FISHER**
P.A.

Very truly yours,

L. Timothy Fisher