**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice* forthcoming)
Andrew J. Obergfell (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com
        aobergfell@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAMLADE, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>LEO PHARMA INC. and<br>LEO PHARMA A/S,<br><br>               Defendants. | Case No.  1:21-CV-00522-DAD-EPG<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LEO PHARMA INC.'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6) OR, ALTERNATIVELY,  TO STRIKE CLASS ALLEGATIONS PURSUANT TO FRCP 12(f)** |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFF'S CLAIMS ARE NOT PREEMPTED ................................................ 4

II.     PLAINTIFF ADEQUATELY STATES A CLAIM FOR BREACH OF
        IMPLIED WARRANTY ......................................................................................... 8

        A.      Picato Is Unfit For Its Ordinary Purpose Because It Is Ineffective
                And Unsafe To Use ..................................................................................... 8

        B.      Plaintiff Properly Alleges Recoverable Damages ...................................... 9

        C.      Plaintiff Adequately Alleges Causation ................................................... 10

III.    PLAINTIFF ADEQUATELY STATES A CLAIM FOR NEGLIGENCE ........... 11

IV.     PLAINTIFF ADEQUATELY STATES A CLAIM FOR UNJUST
        ENRICHMENT ..................................................................................................... 12

V.      DEFENDANT'S MOTION TO STRIKE IS PREMATURE ................................ 13

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORTIES

**PAGE(S)**

**CASES**

*Abbot v. American Cyanamid*,
  844 F.2d 1108 (4th Cir. 1988) ................................................................... 15

*Anglin v. Edgewell Pers. Care Co.*,
  2018 WL 6434424 (E.D. Mo. Dec. 7, 2018) ............................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 3

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ..................................................................................... 3

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .......................................................... 3, 12, 13

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ....................................................................... 3

*Barcal v. EMD Serono, Inc.*,
  2016 WL 1086028 (N.D. Ala. Mar. 21, 2016) ............................................ 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 3

*Brown v. Johnson & Johnson*,
  64 F. Supp. 3d 717 (E.D. Pa. 2014) ............................................................ 5

*Crockett v. Luitpold Pharm., Inc., Civ. A.*,
  2020 WL 433367 (E.D. Pa. Jan. 28, 2020) .................................................. 7

*Daniel v. Navient Sols., LLC*,
  328 F. Supp. 3d 1319 (M.D. Fla. 2018) ..................................................... 13

*Deutsch v. Cook*,
  2020 WL 977894 (E.D. Cal. Feb. 28, 2020) .............................................. 12

*Estate of Cassel v. ALZA Corp.*,
  2014 WL 856023 (W.D. Wisc. Mar. 5, 2014) .............................................. 7

*Gaetano v. Gilead Scis., Inc.*,
  529 F. Supp. 3d 333 (D.N.J. 2021) .................................................... 2, 5, 7

*Geier v. Am. Honda Motor Co., Inc.*,
  529 U.S. 861 (2000) ..................................................................................... 4

*Guidry v. Janssen Pharms., Inc.*,
  206 F. Supp. 3d 1187 (E.D. La. 2016) ................................................................. 6, 7

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*,
  2015 WL 4309427 (N.D. Cal. July 15, 2015) ........................................................... 9

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984) ................................................................................................. 3

*Holley v. Gilead Scis., Inc.*,
  379 F. Supp. 3d 809 (N.D. Cal. 2019) ..................................................................... 7

*Hunt v. McNeil Consumer Healthcare*,
  6 F. Supp. 3d 694 (E.D. La. 2014) ........................................................................... 5

*Hurley v. Lederle Labs. Div. of Am. Cyanamid Co.*,
  863 F.2d 1173 (5th Cir. 1988) ............................................................................... 15

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
  955 F. Supp. 2d 1311 (S.D. Fla. 2013) ................................................................... 13

*In re Land Rover LR3 Tire Wear Prod. Liab. Litig.*,
  2012 WL 5473736 (C.D. Cal. Oct. 24, 2012) ......................................................... 14

*In re Nat'l Prescription Opiate Litig.*,
  440 F. Supp. 3d 773 (N.D. Ohio 2020) ................................................................... 12

*In re Toyota Motor Corp.*,
  790 F. Supp. 2d (C.D. Cal. 2011) ..................................................................... 11, 12

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
  2021 WL 222776 (D.N.J. Jan. 22, 2021) ........................................................ 1, 2, 10

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................... 13

*In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*,
  2021 WL 5235225 (E.D. Pa. Nov. 10, 2021) ........................................................ 6, 7

*In re: McCormick & Co., Inc.*,
  217 F. Supp. 3d 124 (D.D.C. 2016) ....................................................................... 14

*Isip v. Mercedes-Benz USA, LLC*,
  155 Cal.App.4th 19 (2007) ..................................................................................... 8

*Johnson v. Sw. Airlines Co.*,
  2020 WL 6891823 (N.D. Cal. Nov. 24, 2020) ...................................................... 7, 8

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
  315 Fed. Appx. 603 (9th Cir. 2008) ....................................................................... 12

*Kamlade v. LEO Pharma Inc.*,
    2022 WL 358429 (E.D. Cal. Feb. 7, 2022) ............................................................ 2, 8

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
    640 F.3d 72 (3d Cir. 2011) ........................................................................................ 14

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
    2012 WL 2052685 (3d Cir. Apr. 17, 2012) ............................................................... 14

*Laverty v. Smith & Nephew, Inc.*,
    197 F. Supp. 3d 1026 (N.D. Ill. 2016) ...................................................................... 7

*Lenell v. Advanced Min. Tech., Inc.*,
    2014 WL 7008609 (E.D. Pa. Dec. 11, 2014) ............................................................ 14

*Long v. Graco Children's Prod. Inc.*,
    2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) .......................................................... 9

*Love v. United States*,
    915 F.2d 1242 (9th Cir. 1989) ................................................................................... 3

*Lupian v. Joseph Cory Holdings LLC*,
    905 F.3d 127 (3d Cir. 2018) ...................................................................................... 7

*Martin v. Ford Motor Co.*,
    765 F. Supp. 2d 673 (E.D. Pa. 2011) ........................................................................ 13

*McKee v. Gen. Motors LLC*,
    2019 WL 1326679 (E.D. Mich. Mar. 25, 2019) ....................................................... 11

*McMillan v. Lowe's Home Centers, LLC*,
    2016 WL 2346941 (E.D. Cal. May 4, 2016) ............................................................ 13

*Medtronic, Inc., v. Lohr*,
    518 U.S. 470 (1996) .................................................................................................. 4

*Mexia v. Rinker Boat Co.*,
    174 Cal. App. 4th 1297 (2009) ................................................................................. 8

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ....................................................................... 2, 12

*Morris v. Sun Pharma Glob.*,
    2021 WL 687247 (C.D. Cal. Feb. 19, 2021) ............................................................ 6

*Mutual Pharmaceutical Co., Inc. v. Bartlett*,
    570 U.S. 472 (2013) .................................................................................................. 6

*N. Star Int'l v. Ariz. Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) ................................................................................... 3

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................... 14

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011) ........................................................................................................ 6

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) .............................................................................. 16

*Russell v. Ethicon Inc.*,
  2020 WL 4732106 (N.D. Ala. Aug. 14, 2020) ..................................................... 13

*Sikkelee v. Precision Airmotive Corp.*,
  907 F.3d 701 (3d Cir. 2018) ......................................................................................... 6

*Stearns v. Select Comfort Retail Corp.*,
  2009 WL 1635931 (N.D. Cal. June 5, 2009) ........................................................... 9

*Stengel v. Medtronic Inc.*,
  704 F.3d 1224 (9th Cir. 2013) ..................................................................................... 4

*Sullivan v. Aventis, Inc.*,
  2015 WL 4879112 (S.D.N.Y. Aug. 13, 2015) .................................................... 5, 7

*Thomas v. Costco Wholesale Corp.*,
  2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) ....................................................... 9

*Trahan v. Sandoz, Inc.*,
  2015 WL 2365502 (M.D. Fla. Mar. 26, 2015) ................................................. 5, 6, 7

*Utts v. Bristol-Myers Squibb Co.*,
  226 F. Supp. 3d 166 (S.D.N.Y. 2016) ........................................................................ 7

*Wallace v. SharkNinja Operating, LLC*,
  2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) .......................................................... 8

*White v. Ethicon, Inc.*,
  2022 WL 136838 (W.D. Wash. Jan. 14, 2022) .................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................................... 15

*Wyeth v. Levine*,
  555 U.S 555 (2009). ................................................................................................... 4, 5

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*,
  808 F.3d 281 (6th Cir. 2015) ....................................................................................... 7

*Young v. Bristol-Myers Squibb Co.*,
  2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ........................................................ 7

**RULES**

Fed. R. Civ. P. 8(a) ................................................................................................................... 3

Fed. R. Civ. P. 8(d) ................................................................................................................. 13

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2, 3, 7

Fed. R. Civ. P. 12(f) ................................................................................................................. 2

**INTRODUCTION**

Plaintiff Brian Kamlade brings this claim on behalf of himself and others similarly situated against Defendants Leo Pharma Inc. ("Defendant") and Leo Pharma A/S (collectively "Defendants") for breach of the implied warranty of merchantability, negligence, and unjust enrichment associated with his purchase and use of Defendants' Picato gel product ("Picato" or the "Product") because the Product was a carcinogen and ineffective such that the risks of using the Product outweighed its benefits. *See, e.g.,* Amended Class Action Complaint (ECF No. 27) ("FAC") ¶¶ 1, 9. The Product was recalled in Canada and Defendants have ceased distribution in the United States due to the danger and ineffectiveness of the Product. *Id.* ¶¶ 15, 19. Because Picato was both ineffective and a carcinogen, it was unmerchantable and caused economic injury to Plaintiff and Class members in the amount of the full purchase price of the medication. Stated another way, Plaintiff and Class members were denied the benefit of their bargain in the amount of the full purchase price of the Product because a carcinogenic and ineffective product commands no value in the marketplace. As such, Plaintiff and Class members are entitled to a full refund. Plaintiff's theory of damages has been explicitly endorsed in the implied warranty context, specifically with regard to prescription medications. *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for."). This analysis applies with equal force to Picato, wherein the defect in the design of the Product rendered it worthless.

Despite the foregoing, Defendant moves to dismiss Plaintiff's Complaint asserting numerous unpersuasive arguments. First, Defendant argues that "All of Plaintiff's claims [] are preempted by federal law" because those claims "seek to force LEO Pharma to redesign and alter the composition of Picato, an action that would have required the FDA's prior approval." *See*

Defendant Leo Pharma Inc.'s Notice of Motion and Motion to Dismiss Amended Complaint Pursuant to FRCP 12(b)(6) or, Alternatively, to Strike Class Allegations Pursuant to FRCP 12(f) (ECF No. 32) ("MTD") at 8. That is wrong. Plaintiff's allegations do not implicate or contradict federal law because Plaintiff claims that Defendant should have designed Picato with a safer formulation prior to FDA approval—not that Leo Pharma should have unilaterally changed its formula after FDA approval. FAC ⁋ 24; *Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333, 341 (D.N.J. 2021).

    <u>Second</u>, Defendant argues that Plaintiff's claim for breach of implied warranty fails because he does not "allege that Picato failed to treat his actinic keratosis" and therefore, he has not alleged "a fundamental defect that renders [Picato] unfit for its ordinary purpose." MTD at 10-11. However, Plaintiff clearly alleges in the FAC that not only is Picato ineffective at treating actinic keratosis, but Picato also is not fit for its ordinary purpose precisely because it cannot safety treat the condition. FAC ⁋⁋ 5-17. A drug that does not treat its target condition is plainly not fit for its ordinary purpose. *See e.g. Kamlade v. LEO Pharma Inc.*, 2022 WL 358429, at *3 (E.D. Cal. Feb. 7, 2022) ("The law is clear that "fitness," for purposes of an implied warranty claim, "is shown if the product is in [a] safe condition and substantially free of defects."). Therefore, because no reasonable consumer would purchase a medication that is both ineffective and carcinogenic, Plaintiff is entitled to damages in the form of a full refund. FAC ⁋ 15; *see also, e.g. In re Valsartan*, 2021 WL 222776, at *16.

    <u>Finally</u>, Defendant argues that Plaintiff's negligence and unjust enrichment claims fail. Regarding negligence, Defendant argues Plaintiff's claim is barred by the economic loss doctrine. MTD at 15. But the economic loss doctrine does not apply where, as here, plaintiff is seeking damages for a physical injury, skin cancer, which he claims was caused by Picato. FAC ⁋ 28; *see also e.g. Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014). Regarding Plaintiff's unjust enrichment claim, Defendant claims that Plaintiffs cannot bring such a claim because "California does not recognize [unjust enrichment] as a separate cause of action[.]" MTD at 15. But the law is clear that "[w]hen a plaintiff alleges unjust enrichment, a court may construe the

cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation and quotation marks omitted).  Further, unjust enrichment may be pled in the alternative to claims at law.

For the foregoing reasons, and the ones discussed herein, Defendant's motion to dismiss and/or strike should be denied in its entirety.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

//

//

//

1

## ARGUMENT

2

## I.     PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

3          Defendant argues that "[b]ecause it is impossible for LEO Pharma to comply

4   simultaneously with both a purported state law duty to change the formulations of its medication

5   and federal regulations prohibiting LEO Pharma from doing so unilaterally, Plaintiff's claims are

6   preempted."  MTD at 8.  But Plaintiff does not allege that LEO Pharma should have unilaterally

7   changed its formulation after FDA approval.  Instead, Defendant should have designed Picato with

8   a safer formulation prior to FDA approval.

9          "Conflict preemption" precludes the application of state law when it is "impossible for a

10  private party to comply with both state and federal requirements . . . or where state law stands as an

11  obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

12  *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 899 (2000) (internal quotations and citations

13  omitted).  In *Wyeth v. Levine*, the Supreme Court laid out "two cornerstones" of the preemption

14  analysis:

15              First, "the purpose of Congress is the ultimate touchstone in every
                pre-emption case."  Second, "[i]n all pre-emption cases, and
16              particularly in those in which Congress has 'legislated . . . in a field
                which the States have traditionally occupied,' . . . we 'start with the
17              assumption that the historic police powers of the States were not to
                be superseded by the Federal Act unless that was the clear and
18              manifest purpose of Congress.' "

19  555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485 (1996)).

20         "Impossibility pre-emption is a demanding defense."  *Id.* at 573.  The movant has the

21  burden of "demonstrat[ing] that it was impossible for it to comply with both federal and state

22  requirements." *Id*; *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) ("Parties

23  seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming

24  the starting presumption that Congress does not intend to supplant state law.' ") (internal quotation

25  marks and citation omitted).  In general, design defect claims related to brand-name drugs are not

26  preempted by FDA regulations.  *Wyeth*, 555 U.S. at 574 (Congress' "silence on the issue, coupled

27  with its certain awareness of the prevalence of state tort litigation, is powerful evidence that

28

Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness."); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 721 (E.D. Pa. 2014) ("The Supreme Court has not addressed whether federal law can preempt state law design defect claims brought against manufacturers of brand-name or non-prescription drugs.  I conclude that its preemption cases do not extend to the manufacturers of these products.").  Rather, "state-law tort suits play an important 'complementary' role to federal drug regulation" given the FDA's "limited resources, which constrain its ability to police the drug market and protect the public."  *Hunt v. McNeil Consumer Healthcare*, 6 F. Supp. 3d 694, 704 (E.D. La. 2014) (citing *Wyeth*, 555 U.S. at 578-79).

Here, Plaintiff's claims are not preempted because it would not have been impossible for LEO Pharma to comply with both FDA regulations and California law.  Plaintiff does not allege that Defendant should have uniformly redesigned Picato to be different from what the FDA had approved.  Rather, his claim is that LEO Pharma "should have designed" Picato "differently . . . from the get-go."  *Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333, 341 (D.N.J. 2021).  And "Federal law does not dictate the manner in which a manufacturer must design a drug in the first place."  *Id; Sullivan v. Aventis, Inc.*, 2015 WL 4879112, at *6 (S.D.N.Y. Aug. 13, 2015) ("[C]ounsel has cited no federal law that restricts a brand-name drug manufacturer from designing a reasonably safe product prior to FDA approval."); *Trahan v. Sandoz, Inc.*, 2015 WL 2365502, at *6 (M.D. Fla. Mar. 26, 2015) ("[B]ecause there is no basis to find that Sandoz was required under federal law to choose the purportedly substandard glass vial in the first place, the fact that Sandoz could not later change the vial without FDA approval does not establish impossibility preemption.").

In addition, even after approval, LEO Pharma could have sought FDA approval for a new and safer reformulation of Picato, and there is no reason to believe that the FDA would have rejected it.  *Wyeth*, 555 U.S. at 568-73 (claims against a brand-name drug manufacturer were not preempted where the manufacturer offered no "clear evidence that the FDA would not have approved" a change); *Brown*, 64 F. Supp. 3d at 721 ("Defendants have also failed to demonstrate

that the FDA would have rejected a proposed change to Children's Motrin's chemical composition."); *Guidry v. Janssen Pharms., Inc.*, 206 F. Supp. 3d 1187, 1208 (E.D. La. 2016) ("It is not too attenuated to assume that the FDA would approve a safer, alternative design of a drug that it has already approved.").  If Defendant had taken either of these options, it easily could have complied with both state and federal law simultaneously.  And now that Defendant has withdrawn Picato from the market, there is no concern about impossibility of compliance going forward.

Defendant's cited cases are distinguishable.  First, Defendant's reliance on *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472 (2013) is misplaced for the same reasons set out by the court in *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, 2021 WL 5235225 (E.D. Pa. Nov. 10, 2021):  "those cases concerned generic drugs which are subject to rigid federal statutory and regulatory requirements giving the generic manufacturer no alternative but to adhere to the design and labeling of the analogous brand-name drug."  *Id.* at *3.  Picato, "by contrast, is a brand-name drug subject to a different and more flexible protocol."  *Id.*; *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 713 (3d Cir. 2018) ("In *PLIVA* and *Bartlett*, the defendant generic manufacturers were obligated to use the design and labeling of their brand-name counterparts.  Lycoming is not in that position.").  Here, unlike with the generic drugs in *Mensing* and *Barlett*, LEO Pharma could have provided the FDA with a safer formulation of brand-name Picato from the get-go.  It also could have sought a reformulation later on, and like in *Wyeth*, there is no indication that the FDA would have rejected it.  The alternative view—that *Mensing* and *Barlett* apply even in the brand-name context—would have the dramatic effect of foreclosing all drug defect claims, which is something that courts have declined to hold.  *See, e.g.*, *Trahan*, 2015 WL 2365502, at *9 n.5 ("[T]his Court does not interpret the *Bartlett* decision to change course and foreclose all design defect claims against prescription drug manufacturers in the absence of an express statement that it was doing so.").[1]

Similarly, "[n]umerous cases outside the Sixth Circuit have disapproved" of the decision in

---

[1] *Morris v. Sun Pharma Glob.*, 2021 WL 687247, at *1 (C.D. Cal. Feb. 19, 2021), also involved a generic drug, and is therefore similarly inapposite.

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281 (6th Cir. 2015), which held that "design defect claims are barred by impossibility preemption." *In re Zostavax*, 2021 WL 5235225 at *3 (citing *Gaetano*, 2021 WL 1153193, at *7-8; *Crockett v. Luitpold Pharm., Inc.*, Civ. A. No. 19-276, 2020 WL 433367, at *8 (E.D. Pa. Jan. 28, 2020); *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 824–25 (N.D. Cal. 2019); *Young v. Bristol-Myers Squibb Co.*, 2017 WL 706320, at *7 (N.D. Miss. Feb. 22, 2017); *Guidry*, 206 F. Supp. 3d at 1208–09; *Sullivan v. Aventis, Inc.*, 2015 WL 4879112, at *5-6 (S.D.N.Y. Aug. 13, 2015); *Trahan v. Sandoz, Inc.*, 2015 WL 2365502, at *4-6 (M.D. Fla. Mar. 26, 2015); *Estate of Cassel v. ALZA Corp.*, 2014 WL 856023, at *5-6 (W.D. Wisc. Mar. 5, 2014)). Instead, the majority view is that, for brand-name drugs, design defects are not preempted by impossibility preemption. *In re Zostavax*, 2021 WL 5235225 at *4 ("There is nothing in federal law to prohibit a drug manufacturer from originally submitting to the FDA for approval an application for a brand-name drug with a safer design required by state law.").[2]

Finally, Defendant's preemption argument is premature at this stage. "Preemption is an affirmative defense, and pleadings need not anticipate or attempt to circumvent affirmative defenses. This is why a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not the appropriate vehicle for a preemption challenge: affirmative defenses typically turn on facts not before the court at [the dismissal] stage." *Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1029 (N.D. Ill. 2016) (citations omitted). Thus, dismissal is appropriate under Rule 12(b)(6) only when "preemption is manifest in the complaint itself." *See, e.g.*, *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 134 (3d Cir. 2018) (affirming denial of motion to dismiss on basis of preemption); *Johnson v. Sw. Airlines Co.*, 2020 WL 6891823, at *3 (N.D. Cal. Nov. 24, 2020) (denying "the motion to dismiss based on preemption" and "finding the argument premature due to the numerous issues of fact"). Here, where discovery is necessary to

---

[2] Defendant's other cases fare no better. *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166 (S.D.N.Y. 2016) echoes the minority view in view in *Yates*, and has been rejected as "unpersuasive because it relied on portions of the lead opinion in *Mensing* that did not constitute the opinion of the Court." *Holley*, 379 F. Supp. 3d at 823; *Gaetano*, 529 F. Supp. 3d at 346 ("[T]he Court in *Wyeth* expressly rejected reliance on the regulatory preamble cited by *Utts*."). In *Barcal v. EMD Serono, Inc.*, 2016 WL 1086028 (N.D. Ala. Mar. 21, 2016), the court did not address the drug manufacturer's duties prior to FDA approval.

fully flesh out the different ways in which Defendant could have complied with both state and federal law, the fact-intensive issue of preemption is not yet ripe.

## II.   PLAINTIFF ADEQUATELY STATES A CLAIM FOR BREACH OF IMPLIED WARRANTY

### A.   Picato Is Unfit For Its Ordinary Purpose Because It Is Ineffective And Unsafe To Use

Defendant argues that the Court should dismiss Plaintiff's breach of warranty claim because he has not alleged that Picato is unfit for its ordinary purpose. MTD at 10. That is incorrect. The ordinary purpose of Picato is to "treat precancerous actinic keratosis." FAC ⁋ 1. But Picato is not fit for that purpose for two reasons. First, Plaintiff alleges that it is ineffective for treating precancerous actinic keratosis. *Id.* ⁋⁋ 9, 57-58, 65. A drug that does not treat its target condition is plainly not fit for its ordinary purpose.

Second, the ordinary purpose of Picato was not just to treat precancerous actinic keratosis, but to do so safely. As the Court previously noted in this case, "fitness," for purposes of an implied warranty claim, "is shown if the product is in [a] safe condition and substantially free of defects." *Kamlade v. LEO Pharma Inc.*, 2022 WL 358429, at *3 (E.D. Cal. Feb. 7, 2022) (quoting *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009)). Here, separate and apart from its ineffectiveness, Picato is unfit for treating actinic keratosis because it was defectively designed and unsafe for use. Specifically, it causes cancer. *Id.* ⁋⁋ 5-17.

Defendant argues that whether Picato is carcinogenic is irrelevant because it otherwise treats actinic keratosis. Even if that were true—it is not—the defect that renders Picato carcinogenic is a sufficient basis for a claim under the implied warranty of merchantability. Indeed, many courts have held that an implied warranty claim can proceed when a product's defect renders it dangerous to consumers, even if the product works in other respects. *See, e.g.*, *Isip v. Mercedes-Benz USA, LLC*, 155 Cal.App.4th 19, 27 (2007) ("[Defendant]'s attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability."); *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *10 (N.D. Cal. Mar. 9, 2020) (plaintiff properly stated a claim for breach of the implied warranty of

merchantability by alleging that blender was not safe to use, even though its ability to blend was not at issue); *Long v. Graco Children's Prod. Inc.*, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) ("Consumers do not merely expect a car seat to serve its bare-minimum purpose, but rather, reasonably expect that a child's car seat is safe, will function in a manner that will not pose a safety hazard, and is free from defects.") (quotation marks and citation omitted); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (the core function of a bed is not simply to provide a place on which an individual can sleep, but rather to provide a place where an individual can sleep that is free from mold); *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) (the implied warranty of merchantability "protect[s] consumers who purchase products that are not fit to be used in the way those products are normally used—they are contaminated or lack any minimum level of quality such that they would be unsafe for consumption"); *Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, 2015 WL 4309427, at *5 (N.D. Cal. July 15, 2015) (denying motion to dismiss an implied warranty claim because the complaint "plausibly alleged that foods containing artificial trans-fat are not fit for human consumption, due to the myriad medical conditions to which they are linked").

Plaintiff's personal experience matches up with these allegations.  He used Picato to treat his precancerous actinic keratosis.  *Id.* ¶ 28.  "After using the Picato gel as directed, he developed cancer in the area where the Picato was applied."  *Id.*  In other words, no, the Picato did not treat actinic keratosis (it was ineffective) and it instead made things much worse (it caused Plaintiff's cancer, demonstrating that it was defective and unsafe).

**B.    Plaintiff Properly Alleges Recoverable Damages**

Defendant argues that the court should dismiss Plaintiff's implied warranty claim because he seeks a full refund, and that instead he should be seeking "the difference . . .  between the value of the goods accepted and the value they would have had if they had been as warranted . . . ."  MTD at 12.  But in this case, the two are one in the same.  Plaintiff intends to calculate damages here using a benefit of the bargain model, but the output of that model will likely be equivalent to a full refund because no reasonable consumer would purchase a medication that is both ineffective

and carcinogenic.  In fact, Canadian authorities viewed Picato as so worthless that they forced Defendant to pull it from the market.  FAC ¶ 15.  If Picato as sold was worth $0.00, then a benefit of bargain measurement of damages will be equal to the full retail price.  *In re Valsartan*, 2021 WL 222776, at *16 ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for.").

At this stage in the litigation, it is sufficient that Plaintiff alleges that he purchased a tube of Picato for $20 and that, had he known that Picato was carcinogenic and/or ineffective for treating actinic keratosis, he would not have purchased it."  FAC ¶ 28.  Plaintiff specifically leaves the details of his damages analysis for another day.  *Id.* at 13 (seeking "compensatory damages in amounts to be determined by the Court and/or jury").  Indeed, Plaintiff intends to provide a detail damages calculation at the time of class certification and expert disclosures.

### C.   Plaintiff Adequately Alleges Causation

Defendant argues that the Court should dismiss Plaintiff's implied warranty claim because he supposedly "fails to plead that any breach of the implied warranty caused his harm."  MTD at 10. That is incorrect.  Plaintiff alleges that he suffered economic loss as a direct result of purchasing his Picato medication which was not merchantable.  FAC ¶ 28 ("Mr. Kamlade paid a total of approximately $20.00 out of pocket in copayment for Picato. . . .  Had Mr. Kamlade known that Picato was carcinogenic and/or ineffective for treating actinic keratosis, he would not have purchased it."); *id.* ¶ 52 (Plaintiff and Class members were injured and harmed because "they would not have purchased Picato if they knew the medications caused a significantly elevated risk of cancer and that the medications are not generally recognized as safe for human consumption").

Actual manifestation is not a bar here.  While manifestation of a defect is required when a plaintiff alleges a manufacturing defect, which may actually come to fruition in only some units of a product, a design defect is different:

> There are two types of defects:  manufacturing and design.  A manufacturing defect exists when an item is produced in a substandard condition and the defect manifests when the item performs differently from other ostensibly identical units of the same product line.  A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.  Design defects, therefore, exist in every product possessing the faulty design.

*McKee v. Gen. Motors LLC*, 2019 WL 1326679, at *3 (E.D. Mich. Mar. 25, 2019) (internal citations and quotation marks omitted); *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1165 (C.D. Cal. 2011) ("[A]ll Plaintiffs suffered an economic loss at the time of purchase because they received a defective vehicle. . . .  The economic loss was present from the beginning."); *Hartley v. SIG Sauer, Inc.*, No. 4:18-cv-00267-HFS (W.D. Mo.), Order On Motion To Dismiss (ECF No. 41) ("manifestation" did not bar claims because plaintiffs did not allege "a potential defect, but rather, an inherent defect in the pistols").  Accordingly, here, to the extent that Plaintiff is required to plead a manifestation of the alleged defect, he has done so by adequately pleading a design defect.

Plaintiff also plausibly alleges that Picato led to his skin cancer.  The FAC contains references to numerous studies and government reports stating that Picato is carcinogenic.  FAC ¶ 7 (the European Medicines Agency cited three studies showing a significantly increased incidence rate of tumors when using Picato); *id.* ¶ 9 (the Pharmacovigilance Risk Assessment Committee issued a report confirming that Picato "may increase the risk of skin cancer"); *id.* ¶ 12-14 (Health Canada found that 26 case reports of skin cancer "were found to be possibly linked" to the use of Picato, and concluding that "that there may be a link between Picato and the risk of skin cancer.").  These facts, combined with the allegation that Plaintiff used Picato and then "developed cancer in the area where the Picato was applied," *id.* ¶ 28, creates a plausible inference that Picato caused Plaintiff's cancer.

## III.   PLAINTIFF ADEQUATELY STATES A CLAIM FOR NEGLIGENCE

Defendant argues that Plaintiff does not properly allege a claim for negligence because he does not allege that Defendant's conduct caused him harm.  MTD at 15.  This is incorrect for the reasons explained in the previous section.  In short, Plaintiff alleges two forms of harm.  First, Defendant's negligence harmed Plaintiff economically: "had Plaintiff . . . known that Picato was

negligently designed to be carcinogenic and/or ineffective for treating actinic keratosis, [he] would not have purchased Picato." FAC ⁋ 59. Second, Plaintiff alleges that Picato was carcinogenic and resulted in skin cancer on the area of his skin where he applied it. *Id.* ⁋ 28.

Defendant also argues that Plaintiff's negligence claim is barred by the economic loss doctrine. MTD at 15. But the economic loss doctrine does not apply where, as here, a plaintiff is seeking damages for physical injuries as well. *Minkler*, 65 F. Supp. 3d at 820 ("In actions for negligence in California, recovery of purely economic loss is foreclosed in the absence of '(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule.' ") (quoting *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 Fed. Appx. 603, 605 (9th Cir. 2008)). Here, where Plaintiff alleges that Picato caused a physical injury—his skin cancer—the economic loss doctrine is inapplicable.

## IV.   PLAINTIFF ADEQUATELY STATES A CLAIM FOR UNJUST ENRICHMENT

Defendant argues that the Court should dismiss Plaintiff's claim for unjust enrichment because California does not recognize it as a separate cause of action. MTD at 15. But "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana*, 783 F.3d at 762 (citation and quotation marks omitted). Here, Plaintiff adequately states a quasi-contract claim seeking restitution because he alleges that Defendant benefitted in the amount of the sales price for Picato even though the product was ineffective and dangerous. *Deutsch v. Cook*, 2020 WL 977894, at *4 (E.D. Cal. Feb. 28, 2020) ("To state a claim, a plaintiff must affirmatively allege that the defendant received a benefit at plaintiff's expense.") (Drozd, J.).

Next, Defendant argues that Plaintiff cannot make out a claim for unjust enrichment because the FDA approved Picato. MTD at 16. But FDA approval does not change the fact that Defendants unjustly profited from selling a product that did not work, and that was dangerous to use. *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 817 (N.D. Ohio 2020) (N.D. Ohio May 5, 2020) (permitting unjust enrichment claim to proceed where plaintiffs alleged "payments for prescription opioids that were either unsafe, ineffective and/or not medically unnecessary");

*Russell v. Ethicon Inc.*, 2020 WL 4732106, at *8 (N.D. Ala. Aug. 14, 2020) (denying motion to dismiss unjust enrichment claim based on defendant's sale of an FDA-approved "medical device that [was] not safe and effective").

Finally, Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because he also asserts claims for breach of implied warranty and negligence.  MTD at 16.  While Plaintiff cannot recover for both unjust enrichment and his claims at law, at this stage, he is permitted to plead unjust enrichment in the alternative.  *McMillan v. Lowe's Home Centers, LLC*, 2016 WL 2346941, at *8 (E.D. Cal. May 4, 2016) ("The *Astiana* court also held that courts should not dismiss a quasi-contract claim seeking restitution as duplicative or superfluous of other claims.") (citing *Astiana*, 783 F.3d at 762-73); Fed. R. Civ. P. 8(d)(2) (permitting a party to plead claims in the alternative).

## V.       DEFENDANT'S MOTION TO STRIKE IS PREMATURE

Defendant argues that "[e]ven if Plaintiff had stated a viable claim, this Court's prior ruling that the learned intermediary doctrine applies to Plaintiff's claims makes the class allegations facially deficient."  MTD at 17.  That is wrong.

Courts around the country routinely hold that decisions as to class certification are premature at the pleading stage.  *See e.g., In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("In the absence of any discovery or specific arguments related to class certification, the Court is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling."); *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1322–23 (M.D. Fla. 2018) ("An order on class certification is premature prior to discovery and the parties having an opportunity to thoroughly brief the Rule 23 requirements."); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1351-52 (S.D. Fla. 2013) ("Because Plaintiffs have not yet filed a motion for class certification, the Court will not make a determination regarding class certification at this time, and the Court denies Defendant's motion to strike the class and subclass allegations in Plaintiffs' amended complaints."); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680-81 (E.D. Pa. 2011) (explaining that "courts within the Third Circuit

have [found that] a motion to strike class allegations premature where a motion for class certification has not been made and denied."); *Lenell v. Advanced Min. Tech., Inc.*, 2014 WL 7008609, at *3, n.2 (E.D. Pa. Dec. 11, 2014) ("We will not parse the issue of class certification at this time because the question of whether a class is ultimately certifiable is premature when evaluating a motion to dismiss."); *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (noting that ruling on class certification during the motion to dismiss stage was "premature," as the court could not conduct the necessary "rigorous analysis" at that stage), *opinion reinstated in part*, 2012 WL 2052685, at *1 (3d Cir. Apr.17, 2012). This is especially true with regards to the predominance inquiry, which Defendant challenges here. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) ("[N]one of the cases Defendant cites have class allegations been struck for a deficiency with respect to predominance. Rather, in these cases, courts have generally struck class allegations (with leave to amend) on the basis that the class definitions were overbroad, and therefore, the classes were not ascertainable"); *id.* ("[T]he Court will not strike Plaintiffs' class allegations based on a lack of predominance at the pleading stage.").

In particular, courts have found motions to strike to be premature in regards to allegations on behalf of a nationwide class. *In re Land Rover LR3 Tire Wear Prod. Liab. Litig.*, 2012 WL 5473736, at *4 (C.D. Cal. Oct. 24, 2012) (denying motion to strike nationwide class allegations at the pleading stage); *Anglin v. Edgewell Pers. Care Co.*, 2018 WL 6434424, at *14 (E.D. Mo. Dec. 7, 2018) (same); *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 140-41 (D.D.C. 2016), *amended on reconsideration sub nom. In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 218 (D.D.C. 2017) ("Multi-state class claims should not be dismissed if it is possible that the plaintiffs could demonstrate a manageable grouping of the state laws."). Indeed, Plaintiffs explicitly allege that "[s]ubject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint." *See* FAC, at ¶ 35. As such, class certification decisions are premature at this stage of the litigation.

Even on the merits, Defendant's argument fails.  Defendant argues that individualized inquiries predominate (MTD at 17), but the allegations in the FAC state the opposite.  Indeed, the FAC alleges that the "Picato medications were defectively designed and unfit for their intended purpose."  FAC ¶ 51.  Courts have held that the learned intermediary doctrine does not apply to design defect claims.  *Hurley v. Lederle Labs. Div. of Am. Cyanamid Co.*, 863 F.2d 1173, 1180 (5th Cir. 1988) ("[T]he learned intermediary doctrine applies only to the inadequate warning claims; it does not address design defects.") (citing *Abbot v. American Cyanamid*, 844 F.2d 1108 (4th Cir. 1988)); *White v. Ethicon, Inc.*, 2022 WL 136838, at *5 (W.D. Wash. Jan. 14, 2022) ("Design defect claims, however, consider the ordinary consumer.").  Design defect claims (*i.e.* where all purchasers purchased a product with the same defect) are suitable for class certification.  As the Ninth Circuit explained:

> Land Rover suggests that automobile-wear cases involve inherently individualized determinations such that classwide litigation would be inefficient and unmanageable. Instead of pursuing a class action, Land Rover argues, proposed class members should litigate separately the issues of liability and causation. However, as discussed above, appellants allege that their injury results not from bad tires, but from a single, defective alignment geometry. It is far more efficient to litigate this—the basis for their claim—on a classwide basis rather than in thousands of individual and overlapping lawsuits. Whether the alignment geometry was defective, whether Land Rover violated its Limited Warranty for defects within the vehicle, and whether Land Rover was unjustly enriched because consumers' vehicles are worth less due to the defect are issues common to all class members and can be litigated together. Proposed class members face the option of participating in this class action, or filing hundreds of individual lawsuits that could involve duplicating discovery and costs that exceed the extent of proposed class members' individual injuries. Thus, classwide adjudication of appellants' claims is superior to other means of adjudicating this case.

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010).

Further, Defendant did not inform physicians of the danger of skin cancer (FAC ¶ 19, ¶ 23, ¶ 27), and it certainly did not inform physicians that the risk of taking Picato outweighed its benefits.  FAC ¶ 24.  No physician apprised of the true facts regarding Picato would prescribe it to

a patient.  This is a uniform omission made to all physicians who prescribed Picato during the class period.  Therefore, it is inappropriate to strike the class allegations at this juncture.

## **CONCLUSION**

For all the reasons stated above, the Court should deny Defendant's motion.  If the Court determines that the pleadings are deficient in any respect, Plaintiff requests leave to amend.  *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend after dismissing amended complaint).

Dated:  May 2, 2022

**BURSOR & FISHER, P.A.**

By:  ___/s/ L. Timothy Fisher___
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice* forthcoming)
Andrew J. Obergfell (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com
          aobergfell@bursor.com

*Attorneys for Plaintiff*