**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice* forthcoming)
Andrew J. Obergfell (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jarisohn@bursor.com
       aobergfell@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAMLADE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>LEO PHARMA INC. and<br>LEO PHARMA A/S,<br><br>Defendants. | Case No. 1:21-CV-00522-DAD-EPG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LEO PHARMA A/S'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)** |

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ..........................................................................................................................1

FACTUAL BACKGROUND ........................................................................................................1

LEGAL STANDARD ....................................................................................................................2

ARGUMENT .................................................................................................................................2

I.     THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT LEO PHARMA A/S ..................................................................................2

        A.     Defendant Purposefully Directed Activity To California By Selling Picato Medications To Plaintiff And Class Members ...............................................3

            1.     Defendant committed an intentional act..........................................................4

            2.     Defendant's conduct was aimed at California................................................5

            3.     Defendant's sale of Picato caused foreseeable harm to Plaintiff in California................................................................................................8

        B.     Plaintiff's Claim Arises Out Of Defendant's Forum-Related Contacts .....................8

        C.     Defendant Fails To Meet Its Burden To Establish That The Exercise Of Jurisdiction Is Unreasonable ..................................................................................10

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
  480 U.S. 102 (1987) .................................................................................................. 5, 6, 8

*Berven v. LG Chem, Ltd.*,
  2019 WL 1746083 (E.D. Cal. Apr. 18, 2019) ................................................................. 5

*Calder v. Jones*,
  465 U.S. 783 (1984) ....................................................................................................... 4

*Caruth v. Int'l Psychoanalytical Ass'n*,
  59 F.3d 126 (9th Cir. 1995) ............................................................................................ 2

*Corp. Inv. Bus. Brokers v. Melcher*,
  824 F.2d 786 (9th Cir. 1987) ........................................................................................ 11

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ...................................................................................... 10

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) ........................................................................................ 11

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................................................... 3

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
  22 F.4th 852 (9th Cir. 2022) ........................................................................................... 6

*Munderloh v. Biegler GmbH*,
  2022 WL 901408 (D. Ariz. Mar. 28, 2022) ................................................................. 4, 5

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) ............................................................................................ 8

*Patterson v. Home Depot, USA, Inc.*,
  684 F. Supp. 2d 1170 (D. Ariz. 2010) ................................................................. 6, 7, 8, 9

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) ................................................................................. 11

*Salas v. Facultatieve Techs. the Americas, Inc.*,
  2017 WL 4844366 (E.D. Cal. Oct. 26, 2017) .............................................................. 4, 5

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .............................................................................. 2, 3, 4, 9

*Thomas v. Amer Sports Co.*,
  2022 WL 1063721 (D. Idaho Apr. 8, 2022) ................................................................. 5

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ..................................................................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(2) ..................................................................................................... 1

# INTRODUCTION

Plaintiff Brian Kamlade brings this claim on behalf of himself and others similarly situated against Defendants Leo Pharma Inc. and Leo Pharma A/S (for purposes of this motion, "Defendant") for breach of the implied warranty of merchantability, negligence, and unjust enrichment associated with his purchase and use of Defendants' Picato gel product ("Picato") because Picato was a carcinogen and ineffective such that the risks of using it outweighed its benefits. *See, e.g.,* Amended Class Action Complaint (ECF No. 27) ("FAC") ¶¶ 1, 9. Leo Pharma A/S manufactured Picato and sought approval from the United States Food & Drug Administration ("FDA") to manufacture Picato in the United States by submitting a New Drug Application ("NDA"). In seeking this approval, Defendant designed and manufactured Picato for the United States market. Leo Pharma A/S, as the NDA holder, was also responsible for Picato's labeling.

Defendant now moves to dismiss, arguing that this Court may not exercise personal jurisdiction over it. For the reasons set forth herein, Defendant's argument is wrong. This Court may exercise specific personal jurisdiction over Defendant because it purposefully directed activity to the state of California by selling Picato medications to Plaintiff and class members in California. Defendant's straw man argument that it sold Picato through its wholly-owned subsidiary, Leo Pharma Inc. is unpersuasive because, applying the stream of commerce plus test, Defendant placed Picato in the stream of commerce and through actions described herein directed Picato to consumers in California. Further, Plaintiff's action arises out of Defendant's contacts in California. As such, this Court's exercise of personal jurisdiction over Leo Pharma A/S is appropriate.

# FACTUAL BACKGROUND

It is undisputed that Leo Pharma A/S manufactured the defective Picato medication that was ultimately sold in California to Plaintiff. *See* Defendant Leo Pharma A/S's Notice of Motion and Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2); Memorandum of Points and Authorities in Support Thereof (ECF No. 33) ("MTD"), at 5; Declaration of Maiken Gy Kongstad (ECF No. 33-1) ("Kongstad Decl.") ¶ 5. While some Picato was manufactured abroad, Picato was also manufactured in the United States by a contract manufacturer. Kongstad Decl. ¶ 6. Leo Pharma A/S applied for approval of Picato for sale in the United States through the

FDA by submitting a NDA. *See* Declaration of L. Timothy Fisher ("Fisher Dec.") ¶ 2, Ex. A. As part of the NDA process, Leo Pharma A/S formulated Picato for the United States market and drafted the labeling of Picato for use in the United States market, which did not contain any reference to skin cancer risks. FAC ¶ 20, Fisher Dec. ¶ 2, Ex. A. Leo Pharma A/S distributed Picato in the United States through its wholly owned subsidiary, Leo Pharma, Inc. Fisher Dec. ¶¶ 2-3; FAC ¶ 29.

## LEGAL STANDARD

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, where, as here, Defendant's motion is based on the pleadings as opposed to an evidentiary hearing, Plaintiff need only "make a *prima facie* showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). "[U]ncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.

## ARGUMENT

### I. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT LEO PHARMA A/S

Defendant argues that this Court does not have a "basis to assert specific jurisdiction over LEO Pharma A/S" because the "company never conducted any Picato-related business in California, and it does not market, distribute, or sell Picato in the United States." MTD at 1. That is wrong. As discussed below, Defendant purposefully directed Picato to the United States and specifically to the state of California, and therefore has sufficient minimum contacts with the state of California to be subject to personal jurisdiction in this forum.

Where, as here, the Court sits in diversity, the "court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800-01. Therefore, Defendant need only have "minimum contacts" with the forum such that the exercise of

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT 2
CASE NO. 1:21-CV-00522-DAD-EPG

jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). Personal jurisdiction can be either general or specific based on the pervasiveness of the contact between the defendant and the forum. Here, only specific personal jurisdiction is relevant.

The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden of satisfying the first two prongs of the test, and then the burden shifts to Defendant to present a compelling case that the Court's exercise of jurisdiction would be unreasonable. *Id.*

### A. Defendant Purposefully Directed Activity To California By Selling Picato Medications To Plaintiff And Class Members

"A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. As the United States Supreme Court explained:

> [I]f the sale of a product of a manufacturer or distributor such . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly **or indirectly**, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. **The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its**

**products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State**.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980) (emphasis added). For a purposeful direction tort case such as this one, courts look to three factors to determine whether Defendant has purposefully directed its conduct to the forum: "(1) [Defendant] committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Salas v. Facultatieve Techs. the Americas, Inc.*, 2017 WL 4844366, at *4 (E.D. Cal. Oct. 26, 2017) ("In tort cases, the purposeful direction test ordinarily applies and requires satisfaction of all three prongs of the Supreme Court's effects test from *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).").

### 1. Defendant committed an intentional act

The term "intentional act" for purposes of the *Calder* test simply means that Defendant intended to commit the act that caused the harm; Defendant need not intend for the act to actually cause harm. *Schwarzenegger*, 374 F.3d at 806 ("The word 'act' is used [. . .] to denote an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended."); *see also id.* ("We construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.").

Here, Defendant committed an intentional act by manufacturing the defective Picato medications for sale and ultimate use by consumers in the United States, and specifically in the state of California. FAC ¶ 1 ("This is a class action lawsuit about LEO Pharma's[1] manufacturing and distribution of prescription Picato gel (ingenol mebutate) . . ."); ¶ 2 ("LEO Pharma has sold Picato in the United States since 2012.").

Further, that Leo Pharma A/S submitted a NDA to the FDA is an intentional act and prerequisite to selling Picato in the United States, including in the state of California. *See*

---

[1] The FAC at times refers to Leo Pharma A/S and Leo Pharma, Inc. collectively because the companies are vertically integrated such that Leo Pharma A/S manufactures the defective Picato medication and the medication is distributed in the United States by its subsidiary, Leo Pharma Inc. Defendant Leo Pharma A/S admits these facts in its brief. *See* MTD at 1.

*Munderloh v. Biegler GmbH*, 2022 WL 901408, at *4 (D. Ariz. Mar. 28, 2022) ("Defendant Biegler has not denied that it sought and received approval from the FDA to market the Stivax device in the United States. . . That is clearly an intentional act."). Further, the FAC alleges that Leo Pharma A/S formulated the claims on Picato's labeling that failed to provide any representation regarding the risk of skin cancer. FAC ¶ 20. This is evidenced by the fact that Leo Pharma A/S is or was the NDA holder for Picato, and in any event was the original entity to apply for the NDA to the FDA. *See id.*; *see also* Fisher Dec. Ex. A (relevant portions of the NDA application for Picato from the FDA website). The formulation of the labeling that would ultimately appear on Picato's label in the United States and California is yet another intentional act by Leo Pharma A/S.

As to the latter point, that Leo Pharma A/S formulated the defective Picato medications and the labeling for the same that failed to warn of the defect is an independent basis as to why Leo Pharma A/S is a Defendant in this case and why it is irrelevant that Leo Pharma A/S may have subsequently transferred the NDA to a related entity.

## 2. **Defendant's conduct was aimed at California**

"The Ninth Circuit adopted Justice O'Connor's 'stream of commerce plus' formulation of specific jurisdiction" as set forth in *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). *Salas*, 2017 WL 4844366, at *6; *Berven v. LG Chem, Ltd.*, 2019 WL 1746083, at *8 (E.D. Cal. Apr. 18, 2019*), report and recommendation adopted*, 2019 WL 4687080 (E.D. Cal. Sept. 26, 2019) (Drozd, J.) ("A majority of the U.S. Supreme Court has not agreed on a stream of commerce test for specific personal jurisdiction. . . However, the Ninth Circuit has adopted the 'stream of commerce plus' test set forth in Justice O'Connor's concurrence in *Asahi*"); *Thomas v. Amer Sports Co.*, 2022 WL 1063721, at *7 (D. Idaho Apr. 8, 2022) ("[T]he Ninth Circuit has essentially adopted the 'stream of commerce plus' position."). As articulated by Justice O'Connor:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, **for example,**

>       **designing the product for the market in the forum State**, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, **or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State**. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112 (emphasis added). The Ninth Circuit has endorsed the examples of "something more" set forth by Judge O'Connor in *Asahi*. *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022).

      Here, applying the "stream of commerce plus" analysis, it is clear that this Court has specific personal jurisdiction over Leo Pharma A/S. Leo Pharma A/S manufactured Picato and devised the labels for the medication that were to be sold in the United States market. By applying for an NDA from the FDA, Leo Pharma A/S designed Picato for the United States market. *Asahi*, 480 U.S. at 112. Picato's labels were submitted by Leo Pharma A/S to the FDA for approval. Fisher Dec., Ex. A. Leo Pharma A/S intended for Picato to be sold to the U.S. market, including the state of California. More than that, it established a subsidiary, Leo Pharma, Inc., to serve as the distributor and sales agent for Picato in the United States, including in California. *Id.* Therefore, Leo Pharma A/S knew that the Picato medications it manufactured would be sold in the state of California. That Leo Pharma A/S worked through its wholly-owned subsidiary to actually sell the Picato medication in California does not alter the analysis for purposes of the "stream of commerce plus" test.

      *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170 (D. Ariz. 2010) is instructive. There, the plaintiff suffered an injury after using a ladder purchased from Home Depot that he alleged was defectively designed. *Id.* at 1173. The ladder was sold to him by Home Depot, was manufactured by a German entity Krause-Werk, and was distributed in the United States by a wholly-owned distributor of Krause-Werk, an entity known as Krause, Inc. *Id.* The plaintiff sued all three entities and Krause-Werk moved to dismiss for lack of personal jurisdiction. *Id.* at 1174-75. The court denied Krause-Werk's motion, reasoning that

> Krause–Werk purposefully availed itself of jurisdiction in Arizona because the Company placed its design for the Multi–Matic ladder into the "stream of commerce" and directed that design toward U.S. consumers by establishing an American subsidiary and giving that subsidiary a license to manufacture ladders in accordance with that design. With respect to a design or manufacturing defect, the Supreme Court has held that a defective or negligent design may be sufficient to establish specific jurisdiction when a defendant directs the design to a particular forum.

*Id.* at 1183. The court continued that "inasmuch as Krause–Werk designed the ladder according to American standards and sought United States patents for those designs, it can fairly be said that Krause–Werk 'designed' this locking mechanism 'for the market' in states such as Arizona. . . By licensing its subsidiary to disseminate products manufactured in accordance with an allegedly defective design, Krause–Werk should have anticipated being haled into court in the instance that the design had a harmful effect on residents of Arizona." *Id.*

The *Patterson* decision is on all fours with this case. Like in *Patterson*, here Leo Pharma A/S placed its design for Picato into the stream of commerce and directed its design to the United States market, as evidenced by the fact that Leo Pharma A/S sought an NDA approval from the FDA, which is a prerequisite to the selling a pharmaceutical drug to United States consumers. Because Leo Pharma A/S submitted an NDA to the FDA for approval to sell Picato in the United States, it can be said that Leo Pharma A/S designed Picato for the U.S. market. Picato was defectively designed, which, combined with the direction to the United States and the state of California, is sufficient to for the exercise of specific personal jurisdiction. Further, Leo Pharma A/S used its wholly owned subsidiary Leo Pharma Inc. to disseminate the defectively designed Picato in the United States which was solely responsible for distributing Picato in the United States. Therefore, Leo Pharma A/S should have anticipated being haled into court in California for harm caused by the Picato medications it directed into California.

Defendant concedes the key facts allowing for exercise of specific personal jurisdiction over Leo Pharma A/S. For example, Defendant concedes that "LEO Pharma A/S . . . *manufactured* Picato . . . which it did entirely overseas." MTD at 5. Defendant submitted a declaration stating as much. *See* Kongstad Decl. ¶ 5 ("LEO Pharma A/S manufactured the prescription drug Picato (ingenol

mebutate). LEO Pharma A/S manufactured the active pharmaceutical ingredient in Australia, and the finished Picato product in Ireland."). Therefore, Defendant concedes that Picato was solely manufactured by Leo Pharma A/S. Further, Defendant concedes that Picato was also manufactured in the United States, in Texas through a contract manufacturer. *Id.* ¶ 6. Defendant strains the language in this paragraph to suggest that there is no affiliation between Leo Pharma A/S and the contract manufacturer, but it is beyond peradventure that the contract entity was acting at the direction of LEO Pharma A/S and manufacturing Picato for the United States market in accordance with the NDA approved by the FDA. This also weighs strongly in favor of the exercise of jurisdiction.

That Defendant allegedly transferred the NDA to one of its related entities in December of 2016 is an irrelevant fact for the jurisdictional analysis for the reasons discussed herein, namely because Leo Pharma A/S designed the defective Picato and formulated the labeling of Picato such that it failed to disclose the risk of skin cancer to medical professionals and consumers in the United States and California, which Defendant knew would be purchasing and consuming its medication. The case law is clear that these facts alone are sufficient for the exercise of jurisdiction. *See Asahi*, 480 U.S. at 112; *Patterson*, 684 F. Supp. 2d at 1183 ("[T]he Supreme Court has held that a defective or negligent design may be sufficient to establish specific jurisdiction when a defendant directs the design to a particular forum.").

### 3. Defendant's sale of Picato caused foreseeable harm to Plaintiff in California

As to the third factor, Defendant's direction of Picato to California led to Plaintiff suffering economic and physical harm in the State of California. Specifically, Plaintiff purchased the defective Picato medication in the State of California and was diagnosed with cancer in the State of California after using Picato. FAC ¶ 28. For the reasons stated above, this harm was foreseeable because Defendant purposely directed defective Picato to the State of California.

### B. Plaintiff's Claim Arises Out Of Defendant's Forum-Related Contacts

Defendant argues that "the claims he asserts here do not arise out of or relate to [Leo Pharma A/S's] *manufacturing* activities." MTD at 6. That is wrong.

The Ninth Circuit applies a "but for" test regarding the "arising out of" element: "We have said that a claim arises out of the forum-related activities if it would not have happened but for the forum-related activities." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995).

Leo Pharma A/S's manufacturing of Picato is a necessary but for cause of Plaintiff's causes of action because but for Defendant manufacturing defective Picato medications for the United States market and Defendant's direction of Picato to the United States market, Plaintiff would not have been harmed by purchasing the defective Picato medications. An additional but for cause of Plaintiff's injury is Leo Pharma A/S's failure to disclose the risk of skin cancer on Picato's labeling, which Leo Pharma A/S specifically designed for the U.S. market, including in the state of California. Leo Pharma A/S further leveraged its United States subsidiary Leo Pharma Inc. to distribute and sell Picato in the United States. Indeed, the court in *Patterson* found that similar facts satisfied the "arising out of" requirement:

> Absent Krause–Werk's contacts with Arizona, the cause of action in the instant case would not have arisen. Plaintiff and Home Depot have sufficiently alleged that Krause–Werk designed its ladders with a defective locking mechanism which was positioned so that users might inadvertently bump it while on the ladder, causing it to disengage and the ladder to collapse. . . Plaintiff has further provided evidence that Krause–Werk directed this design towards the United States and citizens of Arizona by establishing an American subsidiary and licensing that subsidiary to market the ladder for sale in the United States. In other words, but for Krause–Werk's decision to direct the allegedly defective design towards the United States, Plaintiff would not have been injured by the collapse of his Multi–Matic ladder.

*Patterson*, 684 F. Supp. 2d at 1186.

Defendant points to a non-binding case for the proposition that "personal jurisdiction cannot be established based on the NDA alone." MTD at 7. But Plaintiff is not seeking to establish personal jurisdiction on the "NDA alone"; rather, that Defendant designed Picato for the United States market is evidenced by its application for an NDA, which, combined with the other contacts described herein, collectively work to establish personal jurisdiction over Defendant.

### C. Defendant Fails To Meet Its Burden To Establish That The Exercise Of Jurisdiction Is Unreasonable

Defendant argues that "even if Plaintiff could establish any contact with this forum, exercise of jurisdiction over LEO Pharma A/S still would not be reasonable under the circumstances." MTD at 7. That is wrong.

As set forth above, where, as here, Plaintiff satisfies the first two elements of the analysis, the burden shifts to Defendant to present a "compelling case" as to why exercise of jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. Defendant falls far short of meeting this heavy burden. In undertaking the reasonableness analysis, the Ninth Circuit weighs several factors: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). None weigh in favor of Defendant.

As to the first factor, Leo Pharma A/S has extensively injected itself into the United States market in manufacturing Picato and directing it to the United States market, as discussed above.

As to the second factor, Defendant, a multinational pharmaceutical company with over a billion dollars in yearly revenue (Fisher Dec, Ex. B), will not be burdened by defending itself in federal court in California. Defendant offers generalized assertions of burden but does not explain with specificity what that burden will be. Unbelievably, Defendant argues that "[b]eing haled into federal court in California would thus place significant burdens on LEO Pharma A/S." MTD at 8. This disingenuous assertion by Defendant should be rejected because Defendant has, on numerous occasions, brought suit in the federal courts to seek relief and protection of the laws of the United States. Fisher Dec, Ex. C. If Defendant can file suit in the United States federal courts to assert its rights, it should also be ready to defend itself in those same courts.

As to the third factor, there is no conflict with the sovereignty of Defendant's state, and Defendant does not even make an argument in its brief with regard to this factor.

As to the fourth factor, California has an "interest in seeing that its residents are provided an effective means of redress when they are injured by" tortious conduct in the forum. *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987).

As to the fifth factor, the most efficient judicial resolution of the controversy weighs in favor of Plaintiff because Plaintiff is a California resident and will be litigating this matter against Leo Pharma Inc. in California regardless, and it is most efficient for Leo Pharma A/S to be part of that litigation rather than piecemeal litigation elsewhere. Similarly, the sixth and seventh factors weigh strongly in favor of Plaintiff because if Plaintiff cannot litigate this matter in California, he will lack meaningful redress in the United States.

Because each of the factors weigh in favor of Plaintiff, it is clear Defendant has failed to present a compelling case to establish that the exercise of jurisdiction over it would be unreasonable.

## CONCLUSION

For all the reasons stated above, the Court should deny Defendant's motion. If the Court determines that the pleadings are deficient in any respect, Plaintiff requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend after dismissing amended complaint). To the extent there are jurisdictional facts in dispute that prevent a finding of specific personal jurisdiction, Plaintiff would then request a brief period of jurisdictional discovery to resolve those issues. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) ("Discovery is available in federal court to establish the presence of personal jurisdiction in that court.").

Dated: May 2, 2022                  **BURSOR & FISHER, P.A.**

By:    */s/ L. Timothy Fisher*
           L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

| | |
|---|---|
| 1 | Facsimile: (925) 407-2700 |
| 2 | E-Mail: ltfisher@bursor.com |
| 3 | **BURSOR & FISHER, P.A.** |
| | Joshua D. Arisohn (*pro hac vice* forthcoming) |
| 4 | Andrew J. Obergfell (*pro hac vice* forthcoming) |
| | 888 Seventh Avenue |
| 5 | New York, NY 10019 |
| | Telephone: (646) 837-7150 |
| 6 | Facsimile: (212) 989-9163 |
| 7 | E-Mail: jarisohn@bursor.com |
| | aobergfell@bursor.com |
| 8 | |
| | *Attorneys for Plaintiff* |